UNITED STATES of America, Appellee,

v.

Edward F. NOLAN, Jr.,
Defendant, Appellant.

No. 86–1750.

United States Court of Appeals,
First Circuit.

Argued March 2, 1987.

Decided May 14, 1987.

James L. Sultan, by Appointment of the
Court, with whom Rankin & Sultan was on
brief for defendant, appellant.

Susan R. Via, Asst. U.S. Atty., with whom Robert S. Mueller, III, U.S. Atty., was on brief for appellee.

Before CAMPBELL, Chief Judge, BOWNES and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

■ After a jury-waived trial, appellant Nolan was convicted on two counts of knowingly receiving through foreign mail visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) (Supp. III 1985).[1] He was sentenced to two years' imprisonment, the execution of which was suspended, and he was placed on probation for a period of five years.

The parties stipulated that on June 3 and 6, 1985, United States Customs mail specialists discovered Swedish parcels mailed to Nolan, containing a number of publications (subsequently placed in evidence at trial), all of which included pictures of minors involved in sexually explicit conduct.

The agents obtained and executed a federal search warrant authorizing controlled delivery of the parcels to Nolan's residence. During the search, the agents recovered other materials from Nolan's residence. These materials were admitted into evidence without objection. They revealed that Nolan had made inquiries seeking to obtain child pornography and was very interested in the subject.

The district court marked for identification the magazines from Sweden containing the sexually explicit pictures and reserved its ruling on their admissibility until after the government had presented all its evidence. Eventually, the court did admit the magazines.

On appeal Nolan argues that the district court erred in admitting the publications, and especially the pictures, as substantive evidence. He contends the government never authenticated the pictures because it failed to demonstrate that producing them had involved *the use* of minors engaging in sexually explicit conduct, as the statute requires. Nolan contends, in particular, that the government did not present evidence sufficient to show that the pictures in the magazines were of actual children and not, for example, of wax figures or mannequins. In a similar vein, Nolan complains that the prosecution failed to prove that the pictures were not composite representations or otherwise faked or doctored, or perhaps computer-generated. He suggests, for example, that the pictures could have been fabricated using photographs of nude children taken from legitimate sources like a medical textbook.

■ Preliminarily, although the issue need not detain us, we question whether

---

1. The statute reads in pertinent part,

(a) Any person who—

(1) knowingly transports or ships in interstate or foreign commerce or mails any visual depiction, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct; or

(2) knowingly receives, or distributes any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—

. (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

A question arose at oral argument about applying this statute to materials from abroad in which the minors depicted could be foreign. Arguably, the purpose of the statute is only to protect United States children from the negative effects this activity has on them. We conclude, however, that Congress did not intend to limit prosecutions to depictions using identifiably United States children. In the legislative history for the 1977 version of this statute, the Senate Report stated that "it is quite common for photographs or films made in the United States to be sent to foreign countries to be reproduced and then returned to this country in order to give the impression of foreign origin." S.Rep. No. 438, 95th Cong., 1st Sess. 6, *reprinted in* 1978 U.S.Code Cong. & Ad.News 40, 44. The statute itself, moreover, penalizes any person who ships or receives depictions in "foreign" as well as "interstate" commerce or mails. We conclude that Congress did not regard the country from which the minors came as a material issue.

the problem Nolan raises is one of "authentication." The term "authentication" means threshold proof that a piece of evidence is sufficiently what its proponent claims for a court to allow its admission in evidence. We believe these magazines, including the pictures they contained, were sufficiently "authenticated" for purposes of their admission as trial exhibits by establishing, as the government did, that they were materials that had been mailed to Nolan at his request. Whether the pictures were the kind of visual depictions the law forbids, *i.e.*, ones involving the "use" of actual minors engaging in sexually explicit conduct, 18 U.S.C. § 2252(a)(2)(A), goes more properly to whether the government presented sufficient evidence to prove all the elements of its case than to "authentication." [2] Indeed, however described, the bottom line question is whether the government's proof was sufficient to support a finding, beyond a reasonable doubt, that producing the pictures involved the use of minors engaging in sexually explicit conduct. If so, any question about "authentication" is obviously resolved.

We thus confront, head-on, appellant's assertion that the government never presented adequate proof that the "visual depiction[s]" in the magazines placed in evidence "involve[d] *the use* of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(2)(A) (emphasis supplied). Appellant concedes that the pictures were, on their face, representations of what looked like minors engaging in sexually explicit conduct. He also acknowledges that the prosecution presented pediatric testimony that the subjects were minors. But appellant challenges the factfinder's ability, from all the evidence presented, to infer beyond a reasonable doubt that *real* children were used in the production of the pictures. A photographic expert is said to have been required to help show this.

We have said that " '[i]n reviewing the sufficiency of the evidence, we consider the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences to be drawn therefrom, to determine whether a rational trier of fact could have found each defendant guilty beyond a reasonable doubt.' " *United States v. Krowen*, 809 F.2d 144, 146 (1st Cir.1987) (quoting *United States v. Drougas*, 748 F.2d 8, 15 (1st Cir.1984)).

██ Here it could be reasonably inferred from the appearance of the reproductions in the magazines that these were photographs, not, say, drawings or some other type of images which do not depend upon the use of actual subjects. While the prosecution did not present expert testimony that the pictures in the magazines were photographs, ordinary people in today's society are quite accustomed to seeing photographs and to distinguishing them from other forms of visual representations. We believe it to be within the range of ordinary

---

**2.** Rule 901(a) of the Federal Rules of Evidence provides,

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Whether photographs have been properly authenticated is a preliminary question of fact which falls within the discretion of the district court. *See, e.g.,* 2 C. Scott, *Photographic Evidence* § 1027 (2d ed. 1969); *United States v. Akers*, 702 F.2d 1145, 1149 (D.C.Cir.1983); *United States v. Fleming*, 594 F.2d 598, 607 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); *United States v. Shoemaker*, 542 F.2d 561, 564 (10th Cir.), *cert. denied*, 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976). "[T]hat determination will not be disturbed on appeal absent a showing that there is 'no competent evidence in the record to support it.' "

*United States v. Caldwell*, 776 F.2d 989, 1001 (11th Cir.1985) (quoting *United States v. Koziy*, 728 F.2d 1314, 1321 (11th Cir.), *cert. denied*, 469 U.S. 835, 105 S.Ct. 130, 83 L.Ed.2d 70 (1984). Here, where the judge, not a jury, was the factfinder, "authentication," in the narrow, technical sense of a preliminary ruling prior to allowing the materials to be viewed by the trier of fact, is of small practical import.

We note that, unlike most cases in which photographs need be authenticated, there was no need here to establish that the photos depicted a particular person, object or scene. Who the subject was, and where and by whom photographed, did not have to be shown. The only question—whether called "authentication" or otherwise—was whether the pictures were the kind of visual depictions proscribed by 18 U.S.C. § 2252(a)(2), *i.e.*, whether they involved the use of a minor—any minor—engaging in sexually explicit conduct.

competence for someone not a photography expert to determine that she is viewing a photograph rather than, say, an artistic reproduction. A person might, of course, be fooled by a cleverly contrived drawing; but the test of a factfinder's power to judge evidence without expert help is not whether he or she could ever be mistaken, but whether the subject is within the range of normal experience and knowledge. *Cf.* 2 J. Wigmore, *Evidence* § 559 (Chadbourn rev. 1979) ("No special experience shall be required unless the matter to be testified to is one upon which it would clearly be presumptuous, under the circumstances of the case, for a person of only ordinary experience to assume to trust his senses, for the purposes of his own action in the ordinary serious affairs of life."). Thus we think that from viewing the magazine pictures in evidence the judge below could infer that they were photographs. From this, she could also reasonably infer that the subjects depicted actually existed, since photos are "taken" of something, not generated by an artist. It is but a short step from the foregoing inferences to the conclusion that these depictions were of actual, living children who were, therefore, "used" in the production of these pictures. By such reasoning, a factfinder, consistent with the record and faithful to the allocation of the burden of proof, could plausibly have found that the prosecution had proven this essential element of the offense beyond a reasonable doubt.

■ The next question is whether the people in these photographs are identifiable as minors.[3] As we have said, the government presented expert evidence that they were. A pediatrician testified that the bodily traits of the individuals in the photographs were those of minors, many of them prepubescent minors. The court asked the expert if he could tell whether the images on the pictures could be of wax images or anything of that sort. The witness answered that he was not capable of answering as to that aspect. Nevertheless, at the end of the trial, the court found that

it believed the images could not be those of mannequins because in several of the magazines there is a group of pictures of what is obviously the same child in many different poses. This, plus the clarity of most of the pictures, the court concluded, made it highly unlikely that the pictures were of something else besides real human beings. We believe that this judgment, like a judgment that the pictures were photographs, lay within the competence of the non-expert factfinder to make from her personal perusal of the pictures found in the magazines in evidence.

The court, we observe, had before it, as do we, more than 200 magazine pictures. They depict many different children in a variety of poses. Some of the same children are shown more than once, in different poses. All of the pictures appear to be, and are presented in the magazines as being, real-life representations of people. The pictures are contained, moreover, in ten different magazines (five "Sadio," one "Thai Lolitas," one "Porno Climax Special Sex," one "Lolita," one "Mini Love" and one "Lesbos"). Common sense strongly suggests that all, and certainly some, of these, many photographs involved the use of actual children acting in the manner portrayed. If so, they involved the "use" of minors engaging in sexually explicit conduct.

Appellant would require the government to have introduced expert evidence that these were truthful photographs, and not doctored ones. He speculates that the pictures of nude children might be composites taken from pictures originating in lawful sources. Thus, the depictions of children engaging in sexual acts might have been ingeniously pieced together from photographs of nude children displayed in medical texts.

We do not believe the prosecution was required to call a photography expert to negative the mere speculative possibility of

---

**3.** The statute defines a minor as "any person under the age of eighteen years." 18 U.S.C. § 2255 (Supp. III 1985).

such fakery.[4] While the average person may be unacquainted with the techniques for doctoring pictures, and detecting when they have been doctored, common sense tells us that considerable skill and expense would be required to make realistic composites of activities of these types from other sources, if indeed they can be made. It was reasonable to assume, at least in the absence of any evidence raising an issue of the pictures' authenticity, that such a level of presumably expensive sophistication would not be invoked to manufacture so many pictures of this type and variety in ten different magazines printed on coarse, cheap-looking paper.

It is also reasonable to infer that it would be hard to fake many of the pictures in question. A number are of minors by themselves exposing their genitals or pubic area, a pose which when "lascivious" falls under the definition of "sexually explicit conduct" in the statute.[5] During the direct examination of the pediatrician at trial the following exchange took place,

Q And why do you conclude that, Doctor? People can doctor photographs. People can alter photographs. Why do you conclude that these are not altered photographs or perhaps composites of adult genitalia, let's say, with children's torsos and arms and legs and heads?

A Well, I think that that kind of conglomeration of parts, body parts, would be very bizarre appearing, because of the differences in size, texture. The gestalt would be wrong; in other words, the total picture would not be of a normal human being, most likely.

Even if some of the other pictures—those showing children having intercourse with adults—involved an artificial combining of the subjects, the poses of the children alone would still cause their depiction to fall under the prohibition of the statute against "lascivious exhibition."

Appellant's counsel argued that the state of modern technology is so advanced it can undoubtedly create objects so similar to a human being that it would be difficult to decipher what they are just by looking at a picture of them. Technology, he surmises, might possibly have created "computer-generated images" here that look exactly like photographs of real children. Appellant, however, presented no expert evidence at trial that these pictures were or could have been produced by any such artificial means. There is no evidence in the record that possibilities along these lines exist, much less that the costs of such

---

**4.** The defense produced no expert of its own to show that the pictures were fakes or other than what they appeared to be. At the end of all the evidence the government asked the court to grant it an opportunity to call a photographic expert to deal with the issue that Nolan's counsel had raised. The court denied this request saying it would be unfair to allow the government to cure what could or could not be a defect in the evidence that had already been presented.

**5.** The statute defines "sexually explicit conduct" as

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
(B) bestiality;
(C) masturbation;
(D) sadistic or masochistic abuse; or
(E) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2255 (Supp. III. 1985).

It has been said that in determining whether a visual depiction constitutes a "lascivious exhibition of the genitals or pubic area" under this statute,

the trier of fact should look to the following factors, among others that may be relevant in the particular case:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost,* 636 F.Supp. 828, 832 (S.D. Cal.1986), *aff'd sub nom. United States v. Wiegand,* 812 F.2d 1239 (9th Cir.1987).

technical means, if extant, are low enough to have been practicable for the manufacture of pornographic magazines like these. Whether it would be practicable to manufacture pornography in such a manner is, therefore, purely speculative, and we do not think the government was required to negative in advance what is merely unsupported speculation. Appellant, of course, was free to have presented evidence of his own suggesting that the pictures used other than real subjects. He could have called an expert to testify as to how photographs like these could have been made without using real children. But his uncorroborated speculation that some undefined technology exists to produce these pictures without use of real children, is not a sufficient basis for rejecting the lower court's determination founded on reasonable inferences derived from experience and common sense.

We hold that on this record the prosecution was not required, as part of its affirmative case, to rule out every conceivable way the pictures could have been made other than by ordinary photography. 8A J. Moore, *Moore's Federal Practice* ¶ 29.06 (1987) ("Proof beyond a reasonable doubt does not require that the government adduce evidence excluding all reasonable defense theories thereby leaving the conclusion of guilt independently proved."); *United States v. Smith,* 680 F.2d 255, 259 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983) ("The Government ... need not exclude every reasonable hypothesis of innocence, provided that the record as a whole supports a conclusion of guilt beyond a reasonable doubt.").

Viewing the evidence in the light most favorable to the government, a rational trier of fact could properly have found Nolan guilty beyond a reasonable doubt. Defendant did not produce a scintilla of evidence to incite even a minimal doubt that these pictures are not what on their face they purport to be. Common sense inferences suggest that these are photographs of live children and could be nothing else.

*Affirmed.*