THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST J. NORMAND, Defendant-Appellant.

Second District    No. 2—02—0857

Opinion filed January 30, 2004.

G. Joseph Weller and Mark G. Levine, both of State Appellate Defender's Office, of Elgin, for appellant.

Deborah E. Ellis, State's Attorney, of Oregon (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Ernest J. Normand, was convicted of six counts of child pornography (720 ILCS 5/11—20.1 (West 2000)) following a bench trial in the circuit court of Ogle County. Defendant now appeals, raising two issues. First, he argues that three of the convictions cannot stand in light of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002). Second, he contends that he is entitled to a $5 credit against his fines for time spent in custody prior to sentencing (see 725 ILCS 5/110—14 (West 2000)). The State and defendant agree that this cause must be remanded so that the trial court can determine the amount of the credit to which defendant is entitled; accordingly, we need not address this argument further and remand for that purpose. We otherwise affirm the judgment of the trial court.

Turning to defendant's main argument, he challenges three convictions that were based on his possession of three images downloaded

from the Internet. The images depict what are apparently minors in sexualized poses. The term "depict" is somewhat ambiguous. A depiction may be either a photograph or an image created through some other means, such as painting, carving, or by computer. See Webster's Third New International Dictionary 605 (2002).

The distinction between a photograph and an image generated through some other means was at issue in *Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389. In that case, the United States Supreme Court addressed the constitutionality of certain portions of the federal Child Pornography Prevention Act of 1996 (CPPA) (18 U.S.C. § 2251 *et seq.* (2000)). The Supreme Court invalidated two sections of the CPPA that set forth definitions of child pornography. *Free Speech Coalition*, 535 U.S. at 256, 258, 152 L. Ed. 2d at 425-26, 122 S. Ct. at 1404-05. The first definition included material that "appears to be" a depiction of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2256(8)(B) (2000). The second covered works that were promoted in a manner that "conveys the impression" that they contain images of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2246(8)(D) (2000). Relevant to the instant case, the first definition reached virtual child pornography, that is, computer-generated images produced without the use of actual children. *Free Speech Coalition*, 535 U.S. at 241, 152 L. Ed. 2d at 415, 122 S. Ct. at 1397. Under traditional first amendment (U.S. Const., amend. I) principles, neither obscenity (see *Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973)) nor child pornography (see *New York v. Ferber*, 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982)) is a protected category of speech. The CPPA applied to material that fit into neither category. It did not require that the government prove that the material was obscene, as defined in *Miller. Miller*, 413 U.S. at 24, 37 L. Ed. 2d at 431, 93 S. Ct. at 2615. Furthermore, the rationale of *Ferber*, which held that child pornography was not protected by the first amendment (U.S. Const., amend. I), is that, "[w]here the images are themselves the product of child sexual abuse, *** the State [has] an interest in stamping it out without regard to any judgment about its content." *Free Speech Coalition*, 535 U.S. at 249, 152 L. Ed. 2d at 420, 122 S. Ct. at 1401. In other words, at issue in *Ferber* was the production process, whereby children are exploited, rather than the content of the work. *Free Speech Coalition*, 535 U.S. at 249, 152 L. Ed. 2d at 420, 122 S. Ct. at 1401. According to the Supreme Court, virtual child pornography does not implicate this interest because it is not produced using actual children. *Free Speech Coalition*, 535 U.S. at 250, 152 L. Ed. 2d at 421, 122 S. Ct. at 1401-02. Defining child pornography as material that "appears to be" a child, without reference to the

definition of obscenity set forth in *Miller*, falls outside the categories of unprotected speech delineated in *Miller* and *Ferber*; therefore, the Supreme Court held that the provision was overbroad and unconstitutional. See *Free Speech Coalition*, 535 U.S. at 256, 152 L. Ed. 2d at 425, 122 S. Ct. at 1405.

Our supreme court applied principles set forth in *Free Speech Coalition* to Illinois's child pornography statute (720 ILCS 5/11—20.1 (West 2000)) in *People v. Alexander*, 204 Ill. 2d 472 (2003). Section 11—20.1(f)(7) of the Criminal Code of 1961 defined child pornography as including material that "appears to be[ ] that of a person, either in part, or in total, under the age of 18." 720 ILCS 5/11—20.1(f)(7) (West 2000). The Illinois Supreme Court held that section 11—20.1(f)(7) was unconstitutional because it contained language that was indistinguishable from language in the CPPA that was invalidated in *Free Speech Coalition*. *Alexander*, 204 Ill. 2d at 483. However, the court also rejected constitutional challenges to section 11—20.1(a)(1) and section 11—20.1(a)(6). The court found section 11—20.1(f)(7) to be severable from the remainder of the statute. *Alexander*, 204 Ill. 2d at 484. In so doing, the court construed section 11—20.1(a)(1) and section 11—20.1(a)(6) as applying only to material depicting an actual child. *Alexander*, 204 Ill. 2d at 486. In the present case, defendant stands convicted of violations of section 11—20.1(a)(6).

Thus, defendant's argument that his convictions cannot stand in light of *Free Speech Coalition* appears foreclosed by our supreme court's decision in *Alexander*, where the court found section 11—20.1(a)(6) to be constitutional. It is not entirely clear, however, whether defendant is making a facial or as-applied challenge to section 11—20.1(a)(6). Through much of his argument, defendant speaks of overbreadth. For example, he asserts that the statute "reached his conduct only by overbreadth." However, the overbreadth doctrine does not function in this manner. Protected conduct is not reached by overbreadth; it is directly protected by the operation of the first amendment itself (U.S. Const., amend. I).

■ Two types of attacks can be mounted against a statute based upon the first amendment—facial and as-applied. An overbreadth challenge is a facial challenge. It allows "persons to whom a statute may constitutionally be applied to challenge the statute on the ground that it may conceivably be applied unconstitutionally *to others in situations not before the court*." (Emphasis added.) *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 191 (2003). Thus, it is not proper to say that the child pornography statute reached defendant's conduct through overbreadth. If, on the other hand, defendant is contending that the statute cannot be constitutionally ap-

plied to the conduct he engaged in, he is making an as-applied challenge. Such a challenge "asserts that the particular acts which gave rise to the litigation fall outside what a properly drawn regulation could cover." *Vuagniaux*, 208 Ill. 2d at 191.

■ Although defendant uses the term "overbreadth," it appears to us that he is actually challenging the application of the statute to him. We note that he asserts that the record contains no evidence regarding the identity of the subjects of the images he was charged with possessing. Thus, he is challenging whether the statute can constitutionally be applied to the images he actually possessed. Moreover, defendant challenges only three of his six convictions. If he were making a facial challenge to section 11—20.1(a)(6), there would be no reason to limit his argument in this manner, since, if he succeeded, the statute would be invalid and none of the convictions could stand. We further note that the State treats defendant's argument as a challenge to the sufficiency of the evidence. In a sense, the State is correct in that if the images were produced using actual children, they fall within the scope of *Ferber*, while if they are virtual images, they are protected by the first amendment pursuant to *Free Speech Coalition*. Thus, a problem of proof—whether the images are real or virtual—would be presented. However, defendant's argument clearly is of a constitutional nature. Defendant asserts that the standard of review is *de novo* and relies primarily on *Free Speech Coalition*. We will first treat it as such and later address the State's arguments.

The gist of his argument is that his conviction must be reversed because it is based on possession of images that appear to be children, but it was neither alleged nor proved at trial that actual children were used in the making of the images. Implicit in this argument is the proposition that *Free Speech Coalition*'s invalidation of certain portions of the CPPA placed upon the government a heightened burden of pleading and proving that actual children were used in the production of the images in question. Several courts have considered and rejected this proposition.

The Tenth Circuit confronted the issue in *United States v. Kimler*, 335 F.3d 1132 (10th Cir. 2003). In that case, the defendant argued that *Free Speech Coalition*, at least implicitly, "requires either direct evidence of the identity of children in the proscribed images or expert testimony that the images depicted are those of real children rather than computer generated 'virtual' children." *Kimler*, 335 F.3d at 1140. The Tenth Circuit rejected this proposition, first noting that *Free Speech Coalition* announced no such rule. *Kimler*, 335 F.3d at 1142. The *Kimler* court next relied on *Free Speech Coalition*'s observation that, although "imaging technology might be good and getting better,

\*\*\* it is implausible to conclude that it has actually arrived at the point of indistinguishability." *Kimler*, 335 F.3d at 1142. As the Supreme Court stated:

> "The hypothesis is somewhat implausible. If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." *Free Speech Coalition*, 535 U.S. at 254, 152 L. Ed. 2d at 423, 122 S. Ct. at 1404.

Accordingly, the Tenth Circuit concluded that "[j]uries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge." *Kimler*, 335 F.3d at 1142. Other federal courts of appeal have adopted similar positions. See *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) ("Further, we have previously upheld a jury's conclusion that real children were depicted even where the images themselves were the only evidence the government presented on the subject"), citing *United States v. Vig*, 167 F.3d 443, 449-50 (8th Cir. 1999) (the defendant's "claim that the images may not have been of real children is purely speculative and we do not think that the government, as part of its affirmative case, was required to negate what is merely unsupported speculation"); *cf. United States v. Hall*, 312 F.3d 1250, 1260 (11th Cir. 2002) (finding no plain error in erroneous jury instruction that did not comply with *Free Speech Coalition*'s holding where the reviewing court conducted an independent examination of the pictures at issue and determined that they contained images of real children).

■ Like the federal courts that have confronted the issue, we conclude that *Free Speech Coalition* imposes no heightened burden upon the government to disprove that an image was not generated by computer. The trier of fact may make a determination as to how an image was produced from the image itself. It is not incumbent upon the State to prove that the image is not something other than it plainly appears to be through some means other than an examination of the image itself. A defendant is, of course, free to introduce evidence to controvert this proposition; however, defendant points to no such evidence in the instant case. We do not mean to suggest that a defendant bears some burden of proving an affirmative defense that an image was generated by computer or some other means without the use of actual children. In certain cases, the image may be such that it leaves the trier of fact with a doubt as to whether it depicts an actual child. We simply reiterate the unremarkable proposition that a defendant may introduce evidence to controvert this point, as is the case with any issue in a trial.

■ Accordingly, we conclude that defendant's first amendment rights were in no way violated in the trial below. We note, parenthetically, that the language used by the trial court in rendering judgment indicates that it found that actual children were used in the making of the images defendant possessed. The trial court noted that a police officer who interviewed defendant testified that defendant stated that some images in his possession "contained children under the age of 18." Later, the court stated that the issue was "the age of the persons or person that is found in that photograph was under the age of 18." The trial court's language indicates that it was assessing the age of actual persons who appeared in the images defendant possessed. *United States v. Martens*, 59 M.J. 501, 509 (2003) ("Normal usage and common sense suggest that describing a person as a 'minor' or a 'child' indicates the subject is a real person, unless there is some limiting language such as 'appears to be,' 'virtual,' or 'computer-generated' "). As explained above, the pictures themselves provide ample evidence to support this proposition. Moreover, virtual people do not have ages.

■ In light of the foregoing, the judgment of the circuit court of Ogle County is affirmed. As noted earlier, the parties agree that this cause must be remanded so that the trial court can determine the appropriate credit to which defendant is entitled for time spent in custody prior to sentencing. Therefore, we remand for that purpose.

Affirmed and remanded with directions.

O'MALLEY, P.J., and CALLUM, J., concur.