UNITED STATES, Appellee

v.

Javier CENDEJAS, Staff Sergeant
U.S. Air Force, Appellant

No. 04-0428

Crim. App. No. 34864

United States Court of Appeals for the Armed Forces

Argued October 20, 2005

Decided February 8, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and EFFRON and BAKER, JJ., joined.  CRAWFORD, J.,
filed a dissenting opinion.

Counsel

For Appellant:  Major Karen L. Hecker (argued); Colonel Beverly
B. Knott, Colonel Carlos L. McDade, Major Antony B. Kolenc,
Major Terry L. McElyea, Major James M. Winner, and Major Sandra
K. Whittington (on brief).

For Appellee:  Major Matthew S. Ward (argued); Lieutenant
Colonel Robert V. Combs, Lieutenant Colonel Gary F. Spencer,
Major Steven R. Kaufman, and Major Michelle M. McCluer (on
brief); Colonel LeEllen Coacher.

Military Judge:  Gregory E. Pavlik


**This opinion is subject to revision before final publication.**

United States v. Cendejas, No. 04-0428/AF

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Javier Cendejas pled guilty and was convicted of violating a lawful general order concerning the use of government computers in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2000). Cendejas pled not guilty but was convicted of possessing child pornography in violation of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2252A(a)(5)(B) (2000), communicating indecent language to a child under sixteen and attempted communication of indecent language to a child under sixteen in violation of Articles 80 and 134, UCMJ, 10 U.S.C. §§ 880, 934 (2000). Cendejas, who was tried by a military judge alone, was sentenced to a dishonorable discharge, fifty-four months of confinement, forfeiture of all pay and allowances and a reduction in grade to E-1. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. Cendejas, No. ACM 34864, 2004 CCA LEXIS 50, 2004 WL 388960 (A.F. Ct. Crim. App. Feb. 10, 2004).

After the Supreme Court's decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), the Government must prove that an image depicts an actual child in order to sustain a conviction under the CPPA. United States v. O'Connor, 58 M.J. 450, 453 (2003). The military judge did not make any finding of

2

fact that actual children were used to create the visual depictions possessed by Cendejas. The Air Force court affirmed Cendejas' conviction because Cendejas did not assert that the images were "virtual" and the court concluded, based upon its own examination, that the images were undoubtedly pictures of actual children. We granted review to determine whether the Air Force court properly affirmed Cendejas' conviction.[1]

---

[1] We granted review of the following five issues:

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY FAILING TO SET ASIDE APPELLANT'S CONVICTION FOR POSSESSION OF CHILD PORNOGRAPHY DESPITE THE COURT'S CONCLUSION THAT THE CONVICTION WAS BASED ON CONSTITUTIONAL ERROR.

AS APPELLANT'S RECORD OF TRIAL DOES NOT CONTAIN EXPERT TESTIMONY ON THE ACTUAL OR VIRTUAL NATURE OF THE SUBJECTS OF PHOTOGRAPHIC OR ELECTRONIC IMAGES, DOES THE FACT-FINDING AUTHORITY OF THE AIR FORCE COURT OF CRIMINAL APPEALS PERMIT THAT COURT TO DETERMINE, IN LIGHT OF ALL OTHER EVIDENCE, WHETHER THE IMAGES THEMSELVES DEPICT "ACTUAL" CHILDREN, SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION BASED ON TITLE 18 U.S.C. § 2252A.

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS CAN REVIEW THE IMAGES OF ALLEGED CHILD PORNOGRAPHY AND AFFIRM THE FINDINGS OF GUILTY OF SPECIFICATION 1 OF CHARGE II (POSSESSION OF CHILD PORNOGRAPHY IN VIOLATION OF 18 U.S.C. § 2252A(a)(5)(B)) WHERE THE MILITARY JUDGE AS TRIER OF FACT APPLIED A DEFINITION OF CHILD PORNOGRAPHY THAT WAS, IN PART, UNCONSTITUTIONAL AND THE GENERAL FINDING OF GUILT DOES NOT INFORM THE REVIEWING COURT WHICH, IF ANY, OF THE IMAGES THE FINDER OF FACT FOUND TO BE "VIRTUAL" VERSUS "ACTUAL" CHILDREN.

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT REVIEWED CERTAIN IMAGES OF ALLEGED CHILD PORNOGRAPHY AND AFFIRMED APPELLANT'S CONVICTION FOR POSSESSING CHILD PORNOGRAPHY UPON ITS OWN CONCLUSION

### BACKGROUND

Cendejas, a twenty-eight-year-old Staff Sergeant, met two Canadian female teenagers through an online Internet chat room. A week later, he and a friend traveled to Canada to meet the young girls in person. After their face-to-face meeting, Cendejas continued to chat online with one of the girls, who was thirteen years old. When the girl's parents discovered what was happening, they contacted the Winnipeg Police Department which contacted the Air Force Office of Special Investigations (AFOSI).

While AFOSI was investigating the allegations against Cendejas, his name was flagged during a routine Security Forces review of the government computer server logs for the base. Security Forces determined that Cendejas had accessed a prohibited site on a government computer and provided AFOSI with

---

THAT THE IMAGES WERE OF "REAL" CHILDREN WHERE APPELLANT DID NOT HAVE THE OPPORTUNITY TO PRESENT A DEFENSE AGAINST THE LIMITED CONSTITUTIONAL DEFINITION OF CHILD PORNOGRAPHY.

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT REVIEWED CERTAIN IMAGES OF ALLEGED CHILD PORNOGRAPHY AND AFFIRMED APPELLANT'S CONVICTION FOR POSSESSING CHILD PORNOGRAPHY UPON ITS OWN CONCLUSION THAT THE IMAGES WERE OF "REAL" CHILDREN, THEREBY REMOVING THE GOVERNMENT'S BURDEN OF PROVING THAT THE IMAGES WERE OF ACTUAL AND NOT VIRTUAL CHILDREN BEYOND A REASONABLE DOUBT IN A TRIAL FORUM WHERE THE GOVERNMENT'S EVIDENCE WOULD BE SUBJECT TO CONFRONTATION AND CROSS-EXAMINATION.

three nude pictures that Cendejas had accessed.  Believing that one of the photographs depicted a girl under the age of eighteen, AFOSI began working with the local police department to obtain a search warrant for Cendejas' off-base home.

At the same time, AFOSI monitored Cendejas' communications with the thirteen-year-old girl.  He was arrested when he arranged another meeting with her.  After he was taken into custody, AFOSI and the local police searched his home and seized his personal computer.  Analysis of the computer uncovered twenty images of naked females of varying ages and varying degrees of sexual maturity.  Based on the discovery of these images, Cendejas was charged with possession of child pornography.

During the pretrial phase, the possibility that some of the images may have been virtual was raised by the defense. Cendejas filed a motion to dismiss the CPPA-based charge, arguing that the CPPA was unconstitutionally vague and overbroad, relying on the Ninth Circuit's holding in Free Speech Coalition v. Reno, 198 F.3d 1083 (9th Cir. 1999).  Defense counsel argued that the definition of "child pornography" in § 2256(8)(B)[2] was broad enough to include two different categories of images that were produced without using any children.

---

[2] The definition of the term "child pornography" as used in 18 U.S.C. § 2252A(a)(5)(B) is found in 18 U.S.C. § 2256(8)(B).

Defense counsel pointed out that the "appears to be" language of § 2256(8)(B) could include (1) pictures of adults "made up to be 16 or 17," and (2) computer-generated images that were made "to look like . . . real child[ren]." Defense counsel argued that the government's compelling interest in the protection of children did not justify the criminalization of these two types of pictures because there are no children used in the production of such images.

In response to this line of argument, the military judge asked whether the defense was contending that any of the specific images found on Cendejas' computer were created without using actual children. Defense counsel responded that some of the images appeared to be "digitally altered" but that it was difficult to tell. The military judge denied Cendejas' motion to dismiss finding that under United States v. James, 55 M.J. 297 (C.A.A.F. 2001), the CPPA definitions were constitutional and "[i]t [would] not [be] appropriate . . . to abandon that language."[3]

At trial the parties discussed whether the models used to create the images in question were under eighteen, but the issue of whether some of the images may have been computer-generated

---

[3] The military judge correctly endorsed the § 2256(8) definitions in reliance on James because at the time of his ruling the Supreme Court had not yet granted certiorari in Free Speech Coalition, in which the Supreme Court would later rule that portions of § 2256(8) were unconstitutional. 535 U.S. at 257.

United States v. Cendejas, No. 04-0428/AF

was not raised again.  The military judge ultimately convicted

Cendejas of one specification of possession of child pornography

in violation of the CPPA.

While Cendejas' appeal to the Air Force court was pending,

the Supreme Court granted certiorari and issued its decision in

Free Speech Coalition.[4]  In its decision, the Supreme Court

determined that "certain portions of the § 2256(8) definition

are unconstitutional, specifically the 'or appears to be'

language of § 2256(8)(B), and the entirety of § 2256(8)(D)."

O'Connor, 58 M.J. at 452 (citing Free Speech Coalition, 535 U.S.

at 256, 258).  Before the Air Force court, Cendejas argued that

because the military judge utilized the unconstitutional

definition, his conviction should be set aside.

The Air Force court initially presumed that the military

judge considered all of the definition contained in 18 U.S.C. §

2256(8) and found that it would be:

> [C]onstitutional error to consider within the
> definition of child pornography an image or picture
> that "appears to be" of a minor engaging in sexually
> explicit conduct (18 U.S.C. § 2256(8)(B)) or one that
> is "advertised, promoted, presented, described or
> distributed in such a manner that conveys the
> impression" that it contains a minor engaging in
> sexually explicit conduct.

---

[4] The Supreme Court issued its decision in Free Speech Coalition
in 2002.  This court issued its decision in O'Connor in 2003.
The Air Force Court of Criminal Appeals issued its decision on
February 10, 2005.

United States v. Cendejas, No. 04-0428/AF

2004 CCA LEXIS 50, at *7-*8, 2004 WL 388960, at *3.  The Air Force court went on to find, however, that the military judge did not rely on the unconstitutional portions of the definition and that the error was therefore harmless.

DISCUSSION

I.   Standard of Review

The Court of Criminal Appeals properly identified the applicable legal standard.  After finding that the military judge erroneously relied on an unconstitutional definition of child pornography, the court subjected that error to a "harmless beyond a reasonable doubt" review under Chapman v. California, 386 U.S. 18, 24 (1967).  See e.g., United States v. Simmons, 59 M.J. 485, 489 (C.A.A.F. 2004).  The Government bears the burden of establishing that any constitutional error is harmless beyond a reasonable doubt.  Id.  (citing United States v. Hall, 58 M.J. 90, 94 (C.A.A.F. 2003)).  Whether the error is harmless beyond a reasonable doubt is a question of law that we review de novo. Id.

II.  Virtual Images and Expert Testimony

This court has held that after Free Speech Coalition, "[i]t is no longer enough . . . to knowingly possess, receive or distribute visual depictions that 'appear to be' of a minor engaging in sexually explicit conduct."  O'Connor, 58 M.J. at 453.  Instead, proof that an actual child under the age of

8

eighteen was used in the production of the images is a required element of a charge under the CPPA.  Id.

Since the issue of "actual" versus "virtual" was not litigated at the trial level, the Government offered no evidence that the images were produced using actual children.  While the images themselves constitute some evidence on this issue, they were not introduced for that purpose based on the statements the military judge made in denying Cendejas' motion to dismiss. Cendejas argues that there was insufficient evidence presented at his trial to establish the use of actual child models in the production of the photographs he possessed.  The Government takes the position that a factfinder has the prerogative to decide without expert testimony whether images of child pornography are actual or virtual.[5]

In the wake of the Supreme Court's decision in Free Speech Coalition, every federal circuit court to have considered the question has held that the factfinder can make a determination that an actual child was used to produce the images in question

---

[5] The issue of whether the Government must introduce expert testimony is based on the actual/virtual distinction applicable to prosecutions under clause 3 of Article 134 as a result of the Supreme Court's decision in Free Speech Coalition.  Under the precedents of this court, however, a servicemember can be prosecuted under clauses 1 and 2 of Article 134 for offenses involving virtual child pornography even though such conduct is constitutionally protected in civilian society.  Accordingly, in cases prosecuted under clauses 1 and 2, the Government bears no burden of demonstrating that the images depict actual children -- with or without expert testimony.

United States v. Cendejas, No. 04-0428/AF

based upon a review of the images alone.  See United States v.
Farrelly, 389 F.3d 649, 655 (6th Cir. 2004); United States v.
Slanina, 359 F.3d 356, 357 (5th Cir.), cert. denied, 125 S. Ct.
288 (2004); United States v. Kimler, 335 F.3d 1132, 1142 (10th
Cir. 2003); United States v. Deaton, 328 F.3d 454, 455 (8th Cir.
2003); United States v. Hall, 312 F.3d 1250, 1260 (11th Cir.
2002).[6]  We come to the same conclusion and find that a
factfinder can make a determination as to whether actual
children were used to produce the images based upon a review of
the images alone.  In the military justice system this includes
the military judge and, under appropriate circumstances, a Court
of Criminal Appeals.  We note that this ruling does not prevent
a defendant from having the opportunity to challenge the images
on the basis that they do not depict an actual child.

III.  Factual Basis For Guilt and the Court of Criminal Appeals'
Article 66(c) Power

       This ruling also does not end our inquiry in this case.  In
reaching its decision, the Air Force court noted that "[t]he
issue of 'real' versus 'virtual' children was not raised at

---

[6] The one court that reached an opposite conclusion withdrew its
opinion and vacated its judgment.  See United States v. Hilton,
363 F.3d 58 (1st Cir. 2004), withdrawn and vacated by United
States v. Hilton, No. 03-1741, 2004 U.S. App. LEXIS 19528 (1st
Cir. Sept. 20, 2004) (order granting rehearing).  On rehearing
the Hilton court issued an opinion that does not address this
question.  See United States v. Hilton, 386 F.3d 13 (1st Cir.
2004).

trial" but when the lower court performed its own review of the images it concluded that "the children depicted in those photographs were real, not virtual."  2004 CCA LEXIS 50, at *12-*13, 2004 WL 388960, at *4.  While we have found that a factfinder has the ability to make such a determination based on the images alone, we must consider whether, in this case, this determination was a proper exercise of the unique factfinding power of the Court of Criminal Appeals under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000).

The military judge found that eight of the twenty images met the definition of "child pornography", under 18 U.S.C. § 2256(8)(B).  When the military judge denied Cendejas' motion to dismiss and found the definition of "child pornography" to be constitutional under James, we, like the Court of Criminal Appeals, must assume that he applied the full scope of the 18 U.S.C. § 2256(8) definition to his finding of guilt.  The military judge did not state or suggest that he would disregard those portions of the definition that were later found unconstitutional by the Supreme Court.

Noting that the military judge selected only a portion of the images submitted, and based on its own review, the Court of Criminal Appeals concluded that the military judge "avoided any implication that the definition in 18 U.S.C. § 2256(8)(B) may have been relied upon to support his findings."  2004 CCA LEXIS

11

United States v. Cendejas, No. 04-0428/AF

50, at *12, 2004 WL 388960, at *4.  We disagree.  Rather than avoiding those parts of the definition of child pornography embracing constitutionally protected material, the military judge selected eight images which met the existing definition of child pornography, a definition which embraced both the constitutional and unconstitutional portions of § 2256(8)(B).  In other words, he found guilt because the eight images were either virtual or actual beyond a reasonable doubt.  After Free Speech Coalition, this general finding cannot be upheld.

The Supreme Court has long held that if a factfinder is presented with alternative theories of guilt and one or more of those theories is later found to be unconstitutional, any resulting conviction must be set aside when it is unclear which theory the factfinder relied on in reaching a decision.  See Stromberg v. California, 283 U.S. 359, 368 (1931); see also Williams v. North Carolina, 317 U.S. 287, 292 (1942) ("To say that a general verdict of guilty should be upheld though we cannot know that it did not rest on the invalid constitutional ground on which the case was submitted to the jury, would be to countenance a procedure which would cause a serious impairment of constitutional rights.").

From the record in this case, neither this court nor the Court of Criminal Appeals can determine that the military judge relied only on those portions of the definition later found to

United States v. Cendejas, No. 04-0428/AF

be constitutional by the Supreme Court. Accordingly the Court of Criminal Appeals could not engage in factfinding to affirm this conviction. The Court of Criminal Appeals should have set aside Cendejas' conviction rather than attempting to resolve the uncertain factual basis for the finding of guilt.[7]

IV.  The Burden of Proof and Cenjedas' Opportunity to Present a Defense

The Court of Criminal Appeals' independent review of the images and its reliance on the record of trial to conclude that Cendejas was properly convicted also raises due process concerns. An element of an 18 U.S.C § 2252A offense that the Government must prove is that actual children were used to create the images. O'Connor, 58 M.J. at 453; id. at 456 (Crawford, C.J., dissenting). The Government argues that Cendejas was required to establish that the images were "virtual." This court has repeatedly held that the Government bears the burden of proving each and every element of a crime beyond a reasonable doubt. See, e.g., United States v. Mason,

---

[7] This ruling is consistent with United States v. Carlson, 59 M.J. 475, 476 (2004), a guilty plea case where this court held:

> [T]he Court of Criminal Appeals erred in "finding" that any of the images at issue were visual depictions of a "real minor" for purposes of 18 U.S.C. § 2256(8)(A). The scope of the lower court's factfinding authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), does not extend to making a "finding of fact" of that nature in the context of a guilty plea, where no aspect of either the plea colloquy or

United States v. Cendejas, No. 04-0428/AF

59 M.J. 416, 424 (C.A.A.F. 2004). We agree with the First Circuit, which recently noted, "[i]t bears repeating that the Government is not released from its burden of proof by a defendant's failure to argue, or by an absence of evidence otherwise suggesting, the artificiality of the children portrayed." United States v. Hilton, 386 F.3d 13, 18 (1st Cir. 2004).

We have concluded in this opinion that the Government may use the images themselves to make this showing in appropriate situations. A defendant is then entitled to confront the Government's evidence and present his own evidence that the images are not "actual." See United States v. Browning, 54 M.J. 1, 9 (C.A.A.F. 2000) ("An accused has a constitutional right to present relevant evidence to defend against the charges."); United States v. Woolheater, 40 M.J. 170, 173 (C.M.A. 1994) (recognizing that "the Constitutional right to present defense evidence is a 'fundamental' right") (citing Chambers v. Mississippi, 410 U.S. 284, 295 (1973)).

The military judge's ruling upholding the definition of child pornography in 18 U.S.C. §2256(8)(B) relieved the Government of its obligation to prove that the images were of "actual" children beyond a reasonable doubt in an evidentiary proceeding. That ruling, in turn, removed any opportunity for

the stipulation of fact is directed toward the character of

Cendejas to present a defense based on the "virtual" constitutionally protected nature of the images.  In determining that it could make its own factual review of the images, the Court of Criminal Appeals failed to recognize that since the issue of "virtual" versus "actual" was not litigated at the trial level, its action resulted in Cendejas' conviction being upheld on a theory that Cendejas did not have the opportunity to defend against.

The Court of Criminal Appeals' action deprived Cendejas of the opportunity to confront the Government's evidence on the issue of whether the images were of "actual" or "virtual" children and to present evidence on his behalf that the images were "virtual."  Accordingly, Cendejas' due process rights were violated.  See United States v. Brewer, 61 M.J. 425, 429-30 (C.A.A.F. 2005).  This error is not harmless beyond a reasonable doubt.  With the proper opportunity to present evidence in his defense, Cendejas might have raised a question in the military judge's mind about the origin of the images.

V.    Possibility of a Lesser Included Offense

While the Court of Criminal Appeals' errors require us to set aside Cendejas' conviction of 18 U.S.C. 2252A under clause 3 of Article 134, we have held that in some circumstances a conviction to a lesser included offense under clauses 1 or 2 of

---

the images as depicting "real" or "virtual" minors.

United States v. Cendejas, No. 04-0428/AF

Article 134 (1) or (2) is appropriate. See United States v.
Sapp, 53 M.J. 90, 92 (C.A.A.F. 2000) ("[C]onduct which violates
no specific statute may still be an offense [under Article 134]
if it is found to be prejudicial to good order and discipline or
if it is of a nature to bring discredit upon the armed
forces.").

Because the question of whether the images Cendejas
possessed were created using actual live child models was not
fully and fairly litigated, we will assume without deciding that
the images were virtual for purposes of the lesser included
offense analysis. Thus, the question is whether there was
sufficient evidence introduced at trial to establish that
Cendejas' conduct in possessing virtual child pornography was
either prejudicial to good order and discipline or service-
discrediting. United States v. Mason, 60 M.J. 15, 20 (C.A.A.F.
2004). Conduct prejudicial to good order and discipline is
conduct that causes a reasonably direct and palpable injury to
good order and discipline. United States v. Erickson, 61 M.J.
230, 232 (C.A.A.F. 2005); see also Manual for Courts Martial,
United States pt. IV, para. 60.c.(2)(a) (2005 ed.). Service-
discrediting conduct is conduct which tends to harm the
reputation of the service or lower it in public esteem. United
States v. Vaughan, 58 M.J. 29, 36 (C.A.A.F. 2003).

16

United States v. Cendejas, No. 04-0428/AF

In a case with constitutional implications such as this one, "the record must conspicuously reflect that the accused 'clearly understood the nature of the prohibited conduct.'" United States v. Martinelli, 62 M.J. 52, 67 (C.A.A.F. 2005) (quoting Mason, 60 M.J. at 19). There was no such evidence introduced at Cendejas' trial nor, since this was a contested charge, was there any discussion by the military judge as to what constitutes conduct that is prejudicial to good order and discipline or what constitutes service-discrediting conduct. There is therefore no basis in the record that would support a conviction of a lesser included offense under clauses 1 or 2 of Article 134.

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is reversed as to Specification 1 of Charge II and as to sentence, but is affirmed in all other respects. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. That court may either dismiss Specification 1 of Charge II and reassess the sentence, or it may order a rehearing.

17

<u>United States v. Cendejas</u>, No. 04-0428/AF


CRAWFORD, Judge (dissenting):

I respectfully dissent because the majority:  (1) perpetuates this Court's rejection of federal practice in applying <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002); (2) without articulation of any military necessity or distinction, suggests that servicemembers accused of child pornography offenses have First Amendment and trial rights paramount to those extended by the federal circuits to similarly situated civilian defendants under the same statute; and (3) conducts no balancing or other analysis before issuing an opinion that implicitly promotes artificially elevated rights for servicemembers accused of federal child pornography offenses over those of the military community as a whole.

The effects of the majority's opinion go beyond this single case and will have a very broad impact on a multitude of military prosecutions under the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2225A (2000), as well as on the military communities of all the services.

BACKGROUND

At a general court-martial Appellant was tried by a military judge sitting alone, and pled guilty to violating a lawful general order by using a government computer to search for minor females in several states and countries, but not guilty to all other charges and specifications.  Following mixed

pleas, the military judge convicted Appellant of one specification of possession of child pornography, two specifications of communicating indecent language to a child, two specifications of attempting to communicate indecent language to a child, and one specification of violating a lawful general order by using a government computer for nonofficial purposes, in violation of Articles 134, 80, and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 934, 880, and 892 (2000).  The military judge acquitted Appellant of one specification of attempted carnal knowledge, three specifications of communicating indecent language to a child, and one specification of communicating indecent material to a child.  The convening authority approved the sentence of a dishonorable discharge, fifty-four months of confinement, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.  The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.  United States v. Cendejas, No. ACM 34864, 2004 CCA LEXIS 50, 2004 WL 388960 (A.F. Ct. Crim. App. Feb. 10, 2004).

This Court granted review of the following issue, with briefs, on November 26, 2004:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY FAILING TO SET ASIDE APPELLANT'S CONVICTION FOR POSSESSION OF CHILD PORNOGRAPHY DESPITE THE COURT'S CONCLUSION THAT THE CONVICTION WAS BASED ON CONSTITUTIONAL ERROR.

2

Thus, the issue centers on one charge and specification: possession of "child pornography" in violation of 18 U.S.C. § 2252A(a)(5)(B).

## FACTS

This case differs from any of our previous applications of Free Speech Coalition in which this Court has reversed a conviction.  See, e.g., United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003).  But see United States v. Thompson, 57 M.J. 319, 319 (C.A.A.F. 2002)("[T]he testimony and the evidence establish that the exhibits are pictures of actual children.") (Crawford, C.J., dissenting).  More particularly, this case involves a military judge who denied Appellant's constitutional challenge to 18 U.S.C. § 2252A.  After this motion to dismiss was denied, Appellant pled not guilty to the possession of child pornography offense.  The Government called two witnesses to prove the offense.  First, an investigator testified that Prosecution Exhibit 6 contained twenty pictures of naked females found on Appellant's home computer.  After the foundation was laid for that exhibit, the Government offered it into evidence. The defense counsel objected to photographs 7, 9, 17, and 19 because no genitalia was exposed.  The military judge sustained the objection only as to photograph 9.  The second witness was a board certified pediatrician who testified that the physical characteristics of the females in the photographs were such that

these were photographs of children. The military judge indicated that he would "look at the pictures and . . . make a determination" about whether it was child pornography. The military judge stated: "Now I recognize . . . that part of [the child pornography] calculus, if you will, is me saying I look at the pictures and I make a determination. I am not persuaded in that his witness, terms of telling me a number of ages, is helpful to me." The military judge indicated that he could "sort it out" and did not need expert testimony. In its case on the merits, the defense called a witness who testified that two of the websites from which Appellant had downloaded the pictures in Prosecution Exhibit 6 had legal disclaimers on them that claimed the models depicted were at least eighteen years of age. In rebuttal the Government called a witness who indicated that a computer user would have been able to access the pictures on one of the websites without having to view the disclaimer and that Appellant did not have other websites listed in his computer cache. After the testimony, the military judge found Appellant guilty of the wrongful possession of child pornography.

After hearing evidence and applying pre-Free Speech Coalition law, the military judge convicted Appellant under that statute. The special findings of the military judge and the factfinding of the court below make very clear that the

photographs forming the basis for Appellant's conviction were solely of actual minors.

In this case, the overly broad definitions in 18 U.S.C. § 2256(8) had no factual or legal effect on the findings. After the Government introduced evidence of Appellant's computer searches for "preteen lolita [sic]," "kiddie," and "little tits," an expert was asked to examine a series of photographs seized from Appellant's computer. This expert explained in great detail how the physical characteristics of the subject(s) in each photograph could be analyzed to determine each subject's age. The expert was not cross-examined by the defense. The military judge made "special findings" and determined that eight of the twenty images introduced by the prosecution constituted child pornography. Neither the expert's testimony nor the argument of either counsel suggested in any way that an "appears to be" standard was ever in issue. The key issues in the litigation of this specification were: (1) whether the females depicted were, in fact, under eighteen years of age and (2) whether the depictions themselves were sufficiently lewd to constitute pornography. See generally New York v. Ferber, 458 U.S. 747 (1982). The Court of Criminal Appeals presumed the military judge adequately considered the law as it existed prior to Free Speech Coalition. Cendejas, 2004 CCA LEXIS 50, at *7, 2004 WL 388960, at *3. But even after finding constitutional

error -- that there was an impermissible consideration of the

"appears to be" or "conveys the impression" definitions -- the

court concluded that any error was harmless beyond a reasonable

doubt.  2004 CCA LEXIS 50, at *7-*10, 2004 WL 388960, at *3.

Unlike most intermediate appellate courts and this Court, the

Court of Criminal Appeals has factfinding powers.  Article

66(c), UCMJ, 10 U.S.C. § 866(c) (2000).  It exercised its

factfinding powers in this case and held that "A review of all

the pictures evaluated in this case by the military judge

indicates that the judge resolved even remotely questionable

depictions in favor of the accused and found child pornography

in only those pictures that contained obvious minors."  2004 CCA

LEXIS 50, at *12, 2004 WL 388960, at *4.  The Court of Criminal

Appeals continued, "regardless of the possibility of

superimposed head, [the pictures] contain bodies that clearly

belong to actual children.  As long as real children's bodies

are used in the depiction, this form of photo manipulation does

not render an image 'virtual' instead of 'real.'"  2004 CCA

LEXIS 50, at *10 n.2, 2004 WL 388960, at *3 n.2.  The court then

made its own findings:  "Having reviewed the images, we conclude

beyond any reasonable doubt that the children depicted in those

photographs are real, not virtual."  2004 CCA LEXIS 50, at *13,

2004 WL 388960, at *4.

6

DISCUSSION

A.   Burden of Going Forward, Burden of Persuasion, and
Reasonable Inferences

The initial burden of persuasion and the burden of proof in this case rest with the Government.  Once the Government introduced Prosecution Exhibit 6, with or without the expert testimony, the military judge could draw reasonable inferences that those photographs involved child pornography without the introduction of any further proof in this case.  And we, like the military judge and the court below, can draw our own conclusions based on the evidence.

The majority would place the burden on the Government in the first instance to prove actual children.  That is correct.  But, once the photographs are introduced, the burden of going forward, if there is a reasonable inference they are actual children, shifts to the defense, without ever removing the Government's burden of proof of guilt beyond a reasonable doubt.  Thus, there is a constant changing of the burden of going forward but the ultimate burden will always be on the Government to prove guilt beyond a reasonable doubt.

B.   Application of Free Speech Coalition in the Federal Courts

The findings by the military judge and the judges on the Court of Criminal Appeals are consistent with the approach employed by most of the federal courts that have considered the

issue.[1]  These appellate courts have looked to the entire record

to determine the legal impact of constitutionally impermissible

instructions or explanations.  What I said in my dissent in

Martinelli, 62 M.J. at 84-87, is equally applicable here:

> [The federal] courts have found sufficient evidence
> that images depicted actual children in cases where a
> pediatric expert testified as to the age of the child
> depicted and "the photographs appeared to portray real
> children."

---

[1]  Padgett v. United States, 302 F. Supp. 2d 593, 598-600 (D.S.C.
2004) (finding that language of providence inquiry established
actual nature of children and that, by appellate court's own
review, photos were of actual children); United States v.
Slanina, 359 F.3d 356, 357 (5th Cir. 2004) (stating that the
"Government was not required to present any additional evidence
or expert testimony . . . to show that the images downloaded
. . . depicted real children, and not virtual children"); United
States v. Farrelly, 389 F.3d 649, 655 (6th Cir. 2004) (affirming
conviction where the Government presented "sufficient evidence of
actual children" and the trier of fact 'was capable of reviewing
the evidence to determine whether the Government met its burden
to show that the images depicted real children'") (quoting
Slanina, 359 F.3d at 357); United States v. Kelly, 314 F.3d 908,
912 (7th Cir. 2003) (upholding a guilty plea "because regulation
of real child pornography remains constitutional . . . and Mr.
Kelly possessed real child pornography"); United States v.
Rearden, 349 F.3d 608, 612-14 (9th Cir. 2003) (evidence at trial
sufficient to prove real children); United States v. Kimler, 335
F.3d 1132, 1142 (10th Cir. 2003) (stating that factfinders are
"still capable of distinguishing between real and virtual
images"); United States v. Hall, 312 F.3d 1250, 1260 (11th Cir.
2002) (affirming a Free Speech Coalition conviction because "no
reasonable jury could have found that the images were virtual
children").  But see United States v. Hilton, 386 F.3d 13, 18-19
(1st Cir. 2004) (because the jury was not required to find that
the images were of actual children, even if a commonsense
determination would compel such a finding, the conviction could
not stand).

United States v. Martinelli, 62 M.J. 52, 84-85 (C.A.A.F. 2005)(Crawford, J.,
dissenting).  See also United States v. Destio, No. 04-3110, 2005 U.S. App.
LEXIS 24488 (3d Cir. November 14, 2005) (noting that pictures by themselves,
observed by the factfinder, are sufficient to find that actual children were
involved; Porath v. State, 148 S.W.3d 402, 416 (Tex. App. 2004) (when an
appellant is charged with a felony possession of child pornography, it is
sufficient for the Government to make a presentation of the pictures alone to
establish proof beyond a reasonable doubt.).

Other federal courts addressing this issue have upheld convictions where the factfinder concluded that the images depicted actual children or where the appellate court deemed that it must have been so . . . .  Thus, it is clear that the great weight of federal authority supports the analysis and conclusions of the Army Court of Criminal Appeals.

. . . .

This case revisits a familiar question: how is this Court to ensure compliance with Free Speech Coalition when, during the course of court-martial proceedings, the military judge employed the statutory language found by Free Speech Coalition to be overbroad -- language that could ostensibly permit conviction based on visual depictions of virtual children?  In this case, that question is narrowed to the context of a Care inquiry.

The answer, of course, begins with our duty to follow the decisions of our superior court.  But when we impose upon the Government a greater burden than the Supreme Court requires, we must first articulate a balance between the First Amendment and trial rights of a military accused, on the one hand, and the military community's interest in good order and discipline on the other.  Both the servicemember and the military community share an interest in a lawful, rational application of the CPPA.  Unfortunately, while maintaining a position that affords military child pornographers a level of sanctuary unrecognized by other jurisdictions, the majority provides no balancing and serves only one interest.

As noted above, a growing majority of federal courts have declined an overly restrictive application of Free Speech Coalition, in favor of a measured approach, e.g., consideration of waiver, United States v. Hay, 231 F.3d 630, 639 (9th Cir. 2000), plain error, Hall, 312 F.3d at 1259, and other legal theories, in conjunction with an examination of the facts of each case, including the nature and characteristics of the prohibited images themselves. Richardson, 304 F.3d at 1064.

. . . .

C. Balancing -- Now and in Future Cases

The approach this Court should take in Appellant's case need not be inconsistent with the Court's holding in O'Connor:

. . . .

> We have long recognized that the First Amendment rights of civilians and members of the armed forces are not necessarily coextensive. At the same time, however, we must ensure that the connection between any conduct protected by the First Amendment and its effect on the military environment be closely examined.

This Court's disposition of Appellant's case should, at a minimum, treat those very same considerations addressed by O'Connor: evaluating any "discussion or focus in the record before us regarding the 'actual' character of the images," and ensuring "that the connection between any conduct protected by the First Amendment and its effect in the military environment [is] closely examined." Id. Instead, without explanation or elaboration, the majority purports to rely on O'Connor, while conducting no balancing and implicitly declining to adopt the reasoning of the clear majority of Article III courts.

As a matter of general practice, when we choose to depart from Supreme Court precedent, or from the reasoning of the majority of the federal circuit courts that have followed Supreme Court precedent in construing and applying a constitutional or statutory provision, and when that departure is not required by legislative or executive mandate, this Court should articulate the military necessity or distinction that compels our reasoning.

"This Court has long recognized that the military is, by necessity, a specialized society. We have also recognized that the military has, again by necessity, developed laws and traditions of its own during its long history." Parker v. Levy, 417 U.S. 733, 743.

Balancing this recognition of the military's specialized need for enhanced discipline and regulation, our Court has long maintained vigilance in preserving the rights of servicemembers in the court-martial process. See generally United States v. Jacoby, 11 C.M.A. 428, 29 C.M.R. 244 (1960). When we perform this balancing, however, we must not fail to consider the fabric of the "specialized society" in which servicemembers and their families exist. The Department of Defense and the military departments have emphasized that this "specialized society" consists not only of servicemembers, but of their families as well.

. . . .

When this Court applies a U.S. Code provision and our superior court's interpretation thereof in a manner inconsistent with the bulk of Article III courts -- presumably for the purpose of providing an elevated level of protection for the trial rights of a military accused -- we must weigh the reasons for our divergent application of that statute against the concomitant reduction in the level of protection that statute would otherwise provide to the "specialized society" we also serve. As noted, that society is populated not only by the uniformed men and women who bravely serve our Nation, but by their spouses and children, all of whom have every right to expect a measured and rational application of law by trial and appellate courts. More particularly, in light of this Court's historical balance between individual First Amendment rights and the needs of the "specialized society," the members of that society could hardly anticipate that this Court would, despite the weight of federal decisions to the contrary, construe a Supreme Court decision so as to elevate the right of an individual servicemember to traffic in child pornography above the need of that "specialized society" for good order and discipline.

How then, without being compelled to do so by our superior court, by Congress, or by the President, does this Court elevate the First Amendment and fair trial rights of servicemembers over the military's need for good order and discipline? Are good order and discipline, as well as the safety and security of the

11

> community not threatened by the creation and
> proliferation of child pornography within that
> community?  This Court's application of Free Speech
> Coalition not only places us in the minority of
> federal fora, but, for reasons that remain a mystery,
> confers on servicemembers accused of owning,
> distributing, and trafficking in child pornography a
> status that exalts their constitutional rights above
> those of civilians accused of identical crimes, while
> unnecessarily and unintentionally denigrating the
> legitimate interests of the thousands of other
> servicemembers and their families who comprise the
> "specialized society" recognized by the Supreme Court
> for over thirty years.

Citations and footnotes omitted.

This case amply demonstrates the impact of different levels of protection against trafficking in child pornography for civilian and military communities.  Appellant was tried at Grand Forks Air Force Base which is located within the geographic boundaries of the United States Court of Appeals for the Eighth Circuit.  If the legal precedent of the Eighth Circuit, which is representative of other circuits that have considered this issue, were applied to the granted issue in this case, Appellant's conviction would very likely be affirmed.[2]  The precedent of this Court, however, not only is out of step with

---

[2]  United States v. Deaton, 328 F.3d 454, 455 (8th Cir. 2003) (reaffirming the reasonableness of a "jury's conclusion that real children were depicted, even where the images themselves were the only evidence the government presented on the subject"); United States v. Vig, 167 F.3d 443, 449 (8th Cir. 1999) (holding that the "images were viewed by the jury which was in a position to draw its own independent conclusion as to whether real children were depicted"); . . .

Martinelli, 62 M.J. at 84-85 (Crawford, J., dissenting).

the vast majority of federal courts that have considered the issue, but also provides a lesser level of protection to the military community at Grand Forks Air Force Base, as well as all other military installations.

Because the disposition in this case is yet another step by this Court away from the mainstream of federal practice and from our historical practice of balancing competing rights and interests, I respectfully dissent.